**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

United States of America,

Plaintiff,

v.

Kaylem Skacy,

Defendant.

No. CR-25-08175-001-PCT-DWL

**ORDER**

This case is set for trial on November 9, 2026. In advance of trial, the parties have filed an array of motions. This order addresses two of those motions: (1) Defendant's motion to retain agents' rough notes (Doc. 41); and (2) Defendant's motion in limine to compel disclosure of *Brady* and *Henthorn* material (Doc. 61). For the reasons that follow, both motions are denied.

**RELEVANT BACKGROUND**

On September 11, 2024, a Navajo Nation police officer responded to a reported fight at the McDonald's in Tuba City, Arizona, within the boundaries of the Navajo Nation Indian Reservation. (Doc. 43 at 2.) When the officer arrived, a bystander told him that the white SUV parked near the front entrance was involved in the fight. (*Id.*) The officer pulled up behind the parked SUV and activated his lights and sirens. (*Id.*) Defendant was in the SUV's driver's seat. (*Id.*) The officer eventually conducted a search of the SUV and "found a black shoulder bag containing a Glock 19X pistol with a magazine inserted, a purple part on the back of the slide that appeared to be a 'switch,' and a small baggie

containing a leafy green substance." (*Id.*) The government contends that Defendant admitted, after being detained and *Mirandized*, "that the gun was his and that it had something added on the back of the slide." (Doc. 47 at 2. *See also* Doc. 37 at 2.)[1]

On September 16, 2025, the grand jury returned a one-count indictment charging Defendant with Possession of a Machinegun, in violation of 28 U.S.C. §§ 922(o) and 924(a)(2). (Doc. 1.) The indictment reads: "On or around September 11, 2024, in the District of Arizona, the defendant, KAYLEM SKACY, did knowingly possess a machinegun, that is, a machinegun conversion device commonly known as a 'Glock switch,' which is designed and intended solely and exclusively for use in converting a firearm into a machinegun." (*Id.* at 1.)

On February 2, 2026, ATF Firearms Enforcement Officer Cody Toy ("Officer Toy") issued a "Report of Technical Examination." (Doc. 37-1 at 3-7.) The portion of the report entitled "Findings" states that Officer Toy began by inspecting "Exhibit 1," which is "a 9mm Luger caliber firearm, originally manufactured as a semiautomatic pistol by Glock, GmbH, in Austria," and that "[a]s received, Exhibit 1 [was] fitted with a machinegun conversion device further referenced as Exhibit 1A." (*Id.* at 4-5.) The report specifies that "Exhibit 1A is a combination of parts designed and intended for use in converting a semiautomatic, Glock-type pistol into a machinegun (similar to U.S. Patent 5,705,763) by utilizing an extended 'leg' to push the trigger bar down and out of engagement with the firing pin as the slide closes, releasing the partially retracted firing pin to travel forward and fire a cartridge. When the trigger is depressed, this device enables a Glock pistol to shoot automatically more than one shot, without manual reloading, with a single function of the trigger." (*Id.* at 5.) After examining Exhibits 1 and 1A, Officer Toy "performed a function test of Exhibit 1 with Exhibit 1A attached," during which "Exhibit 1 tested as a semiautomatic only." (*Id.*) During this test, Officer Toy "noted some damage to the leg of Exhibit 1A." (*Id.*) Next, noting that Exhibit 1A was "reparable," Officer Toy "installed

[1] Defendant has moved "to suppress the firearm seized from his vehicle, together with all derivative evidence obtained as a result of the unlawful search." (Doc. 43 at 1.) That motion will be addressed via separate order.

a small piece of paper as a shim under the leg of the device and performed the function test again," and during this second test, "Exhibit 1 tested positive for machinegun functionality." (*Id.* at 5-6.) More specifically, after Officer Toy "inserted a two-round ammunition load and pulled the trigger," "Exhibit 1 fired both rounds automatically by a single function of the trigger." (*Id.* at 6.) With that said, when Officer Toy then "inserted a five-round ammunition load and pulled the trigger, Exhibit 1 fired the first 3 rounds automatically by a single function of the trigger . . . [but] failed to fire the fourth round." (*Id.*) And when Officer Toy "repeated this test twice more," "Exhibit 1 only function[ed] as a semiautomatic firearm." (*Id.*)

Based on these findings, Officer Toy offers an array of opinions in the portion of the report entitled "Conclusions," including, as relevant here, the opinions that "Exhibit 1A, in and of itself, is a combination of parts designed and intended for use in converting a weapon into a machinegun; thus, it is a 'machinegun' as defined in 26 U.S.C. § 5845(b)" and that "Exhibit 1A is a 'machinegun' as defined in 18 U.S.C. § 921(a)(24)." (*Id.*)[2]

On October 5, 2026, Defendant filed the pending motion to retain agents' rough notes. (Doc. 41.)

On October 13, 2026, the grand jury returned a superseding one-count indictment. (Doc. 44.) It provides: "On or about September 11, 2024, in the District of Arizona, the defendant, KAYLEM SKACY, did knowingly possess a machinegun, that is, a machinegun conversion device commonly known as a 'Glock switch,' which is a combination of parts designed and intended for use in converting a weapon into a machinegun." (*Id.* at 1.)

On October 19, 2026, the United States responded to the motion to retain agents' rough notes. (Doc. 50.) The time to file a reply has expired and Defendant did not file a reply. Additionally, neither side requested oral argument in relation to this motion.

On October 20, 2026, Defendant filed the pending motion in limine to compel

---

[2] Defendant has moved to exclude Officer Toy's opinions. (Doc. 37.) That motion will be addressed via separate order.

disclosure of *Brady* and *Henthorn* material. (Doc. 61.)

On October 22, 2026, the United States filed a response to the motion in limine. (Doc. 63.) The order setting the final pretrial conference did not authorize replies in relation to motions in limine (Doc. 33 at 3), and neither side requested oral argument in relation to this motion.

**DISCUSSION**

I. Motion To Retain Agents' Rough Notes

In his less-than-one-page motion, Defendant requests the entry of "an Order requiring any law enforcement agent to retain and preserve all rough notes taken as a part of their investigation, whether or not the contents of such rough notes are incorporated in official records." (Doc. 41.) Defendant does not offer any factual argument as to why he believes undisclosed rough notes may exist in this case. Nor does Defendant offer any factual argument as to why any hypothetical undisclosed rough notes may contain information not reflected in the official reports that have been disclosed to him. Instead, Defendant has filed a boilerplate motion that could be filed in any criminal case.

In response, the United States asserts that it "has consulted with the federal law enforcement officers who may testify at trial, and they reported that they do not have rough notes related to this investigation. The United States will similarly consult with the Navajo Nation police officers who may testify at trial. If they have rough notes, the United States will disclose them consistently with Federal Rule of Criminal Procedure 26.2 and the Jencks Act." (Doc. 50 at 1.) The United States further notes that in *United States v. Griffin*, 659 F.2d 932 (9th Cir. 1981), the Ninth Circuit stated that "[i]t is highly unlikely that the agents' rough notes could be considered Jencks Act statements." (*Id.*)

On this record, Defendant is not entitled to relief. At the outset of this case, the Court issued an order stating that "the United States is ordered to disclose in a timely manner all exculpatory evidence to the defendant(s), that is, all evidence that is favorable to the defendant(s) or tends to cast doubt on the United States' case, as required by *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny." (Doc. 7.) Thus, to the extent

Defendant's motion is rooted in *Brady*-related concerns, the order he seeks is duplicative of the order already issued. Meanwhile, to the extent Defendant's motion is rooted in Jencks Act-related concerns, *Griffin* undermines the notion that rough notes qualify as Jencks Act material and Defendant has not, at any rate, offered any developed argument as to why there is any missing Jencks Act material here.

II. Motion In Limine To Compel Disclosure Of *Brady* And *Henthorn* Material

In his motion in limine, Defendant seeks "an order compelling the government to disclose all favorable, material, and impeachment evidence in its possession, custody, or control, and to conduct the personnel-file review that governing Ninth Circuit law requires. This motion is directed at the government's noticed expert, ATF Firearms Enforcement Officer Cody Toy, and at every other law-enforcement witness the government intends to call at trial." (Doc. 61 at 1.) Once again, Defendant does not identify any factual, case-specific reason for suspecting that any *Brady* or *Henthorn* material remains hidden. Instead, he has again filed a boilerplate motion that could be filed in any criminal case. Additionally, Defendant's motion does not include a certification that his counsel met and conferred with the United States before filing it.

In response, the United States argues as follows: "The Court should deny this motion as moot. The defendant requests an order to compel the government to comply with its *Brady* obligations. The Court already entered such an order at the defendant's initial appearance. Further, the United States is aware of its obligations under *Brady* and its progeny (including *Henthorn* and *Giglio*), has met those obligations thus far, and will continue to do so." (Doc. 63.)

On this record, Defendant is not entitled to relief. As an initial matter, the Court previously issued an order stating that any motion in limine "must contain a certification that the movant's counsel met and conferred in good faith with opposing counsel and the parties could not reach agreement." (Doc. 33 at 3.) Defendant's motion lacks such a certification. (Doc. 61.) For that reason alone, it is denied. The motion also fails on the merits, as the order being requested is duplicative of the *Brady* order issued at the outset of

the case. (Doc. 7.)

Accordingly,

**IT IS ORDERED** that Defendant's motions (Docs. 41, 61) are **denied**.

Dated this 29th day of October, 2026.

Dominic W. Lanza
United States District Judge