**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

United States of America,

Plaintiff,

v.

Kaylem Skacy,

Defendant.

No. CR-25-08175-001-PCT-DWL

**ORDER**

This case is set for trial on November 9, 2026. In advance of trial, the parties have filed an array of motions. This order addresses two of those motions: (1) Defendant's motion to dismiss the indictment for failure to state an offense (Doc. 39); and (2) Defendant's motion to dismiss the indictment on Second Amendment, Commerce Clause, and Due Process grounds (Doc. 40). For the reasons that follow, both motions are denied.

**RELEVANT BACKGROUND**

On September 11, 2024, a Navajo Nation police officer responded to a reported fight at the McDonald's in Tuba City, Arizona, within the boundaries of the Navajo Nation Indian Reservation. (Doc. 43 at 2.) When the officer arrived, a bystander told him that the white SUV parked near the front entrance was involved in the fight. (*Id.*) The officer pulled up behind the parked SUV and activated his lights and sirens. (*Id.*) Defendant was in the SUV's driver's seat. (*Id.*) The officer eventually conducted a search of the SUV and "found a black shoulder bag containing a Glock 19X pistol with a magazine inserted, a purple part on the back of the slide that appeared to be a 'switch,' and a small baggie

containing a leafy green substance." (*Id.*) The government contends that Defendant admitted, after being detained and *Mirandized*, "that the gun was his and that it had something added on the back of the slide." (Doc. 47 at 2. *See also* Doc. 37 at 2.)[1]

On September 16, 2025, the grand jury returned a one-count indictment charging Defendant with Possession of a Machinegun, in violation of 28 U.S.C. §§ 922(o) and 924(a)(2). (Doc. 1.) The indictment reads: "On or around September 11, 2024, in the District of Arizona, the defendant, KAYLEM SKACY, did knowingly possess a machinegun, that is, a machinegun conversion device commonly known as a 'Glock switch,' which is designed and intended solely and exclusively for use in converting a firearm into a machinegun." (*Id.* at 1.)

On February 2, 2026, ATF Firearms Enforcement Officer Cody Toy ("Officer Toy") issued a "Report of Technical Examination." (Doc. 37-1 at 3-7.) The portion of the report entitled "Findings" states that Officer Toy began by inspecting "Exhibit 1," which is "a 9mm Luger caliber firearm, originally manufactured as a semiautomatic pistol by Glock, GmbH, in Austria," and that "[a]s received, Exhibit 1 [was] fitted with a machinegun conversion device further referenced as Exhibit 1A." (*Id.* at 4-5.) The report specifies that "Exhibit 1A is a combination of parts designed and intended for use in converting a semiautomatic, Glock-type pistol into a machinegun (similar to U.S. Patent 5,705,763) by utilizing an extended 'leg' to push the trigger bar down and out of engagement with the firing pin as the slide closes, releasing the partially retracted firing pin to travel forward and fire a cartridge. When the trigger is depressed, this device enables a Glock pistol to shoot automatically more than one shot, without manual reloading, with a single function of the trigger." (*Id.* at 5.) After examining Exhibits 1 and 1A, Officer Toy "performed a function test of Exhibit 1 with Exhibit 1A attached," during which "Exhibit 1 tested as a semiautomatic only." (*Id.*) During this test, Officer Toy "noted some damage to the leg of Exhibit 1A." (*Id.*) Next, noting that Exhibit 1A was "reparable," Officer Toy "installed

[1] Defendant has moved "to suppress the firearm seized from his vehicle, together with all derivative evidence obtained as a result of the unlawful search." (Doc. 43 at 1.) That motion will be addressed via separate order.

a small piece of paper as a shim under the leg of the device and performed the function test again," and during this second test, "Exhibit 1 tested positive for machinegun functionality." (*Id.* at 5-6.) More specifically, after Officer Toy "inserted a two-round ammunition load and pulled the trigger," "Exhibit 1 fired both rounds automatically by a single function of the trigger." (*Id.* at 6.) With that said, when Officer Toy then "inserted a five-round ammunition load and pulled the trigger, Exhibit 1 fired the first 3 rounds automatically by a single function of the trigger . . . [but] failed to fire the fourth round." (*Id.*) And when Officer Toy "repeated this test twice more," "Exhibit 1 only function[ed] as a semiautomatic firearm." (*Id.*)

Based on these findings, Officer Toy offers an array of opinions in the portion of the report entitled "Conclusions," including, as relevant here, the opinions that "Exhibit 1A, in and of itself, is a combination of parts designed and intended for use in converting a weapon into a machinegun; thus, it is a 'machinegun' as defined in 26 U.S.C. § 5845(b)" and that "Exhibit 1A is a 'machinegun' as defined in 18 U.S.C. § 921(a)(24)." (*Id.*)[2]

On October 5, 2026, Defendant filed both of the motions to dismiss addressed in this order. (Docs. 39, 40.)[3]

On October 13, 2026, the grand jury returned a superseding one-count indictment. (Doc. 44.) It provides: "On or about September 11, 2024, in the District of Arizona, the defendant, KAYLEM SKACY, did knowingly possess a machinegun, that is, a machinegun conversion device commonly known as a 'Glock switch,' which is a combination of parts designed and intended for use in converting a weapon into a machinegun." (*Id.* at 1.)

On October 19, 2026, the United States responded to both motions to dismiss.

---

[2] Defendant has moved to exclude Officer Toy's opinions. (Doc. 37.) That motion will be addressed via separate order.

[3] Defendant's request for oral argument as to the first motion to dismiss (Doc. 39) is denied because the issues are fully briefed and argument would not aid the decisional process. *See* LRCiv 7.2(f); LRCrim 12.1. Defendant's request for an evidentiary hearing as to the second motion to dismiss (Doc. 40) is denied because the outcome does not turn on any material disputed issues of fact. *United States v. Howell*, 231 F.3d 615, 620-21 (9th Cir. 2000). *Cf.* LRCrim 16.1(b).

(Docs. 48, 49.) The time to file a reply has expired and Defendant did not file a reply in support of either motion.

On October 25, 2026, the United States produced the reports of two trial preparation interviews with Officer Toy. (Doc. 67-1.) During the second interview, on September 24, 2026, Officer Toy "explained that he conducted a manual function test of the firearm and machinegun conversion device (MCD) consistent with [ATF's] Standard Operating Procedures (SOPs). Upon completing the manual function test, Toy determined the firearm and MCD would not work as received during a live test fire. As a result, FEO Toy adjusted the tolerances of the device using a small paper shim before he conducted a live test fire." (*Id.* at 2.)[4] The report states that this information is "consistent with what was contained in [Officer Toy's] written report related to the examination of Exhibits 1 and 1A in this case." (*Id.*)

**ANALYSIS**

I. <u>Motion To Dismiss For Failure To State An Offense</u>

A. **Legal Standard**

Under Rule 12(b)(3)(B)(v) of the Federal Rules of Criminal Procedure, a defendant may file a pretrial motion to dismiss the indictment for "failure to state an offense." *Id.*

"In determining whether an indictment charges a cognizable offense, we are bound by the four corners of the indictment, must accept the truth of the allegations in the indictment, and cannot consider evidence that does not appear on the face of the indictment." *United States v. Kelly*, 874 F.3d 1037, 1047 (9th Cir. 2017). "To pass constitutional muster, an indictment must be sufficiently specific to inform the defendant of the charge against him and to enable him to plead double jeopardy in any future prosecutions for the same offense. Those requirements are satisfied by an indictment that tracks the wording of the statute, as long as the language sets forth the essential elements of the crime." *United States v. Yonn*, 702 F.2d 1341, 1348 (9th Cir. 1983) (citation

[4] As discussed in a later footnote, the parties dispute whether these statements constitute exculpatory and/or impeachment evidence. (Docs. 67, 74.)

omitted). Thus, "[a]n indictment . . . need not specify the theories or evidence upon which the government will rely." *United States v. Cochrane*, 985 F.2d 1027, 1031 (9th Cir. 1993). "The test for sufficiency of the indictment is not whether it could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." *United States v. Awad*, 551 F.3d 930, 935 (9th Cir. 2009) (cleaned up).

B. **Relevant Statutory Text**

Because Defendant's first motion to dismiss turns, at least in part, on the meaning of the term "machinegun," it is helpful to begin by providing the statutory text. Under 26 U.S.C. § 5845(b),

> The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

*Id.*

C. **The Parties' Arguments**

In his motion, Defendant acknowledges that § 5845(b) identifies four different categories of items that may qualify as a "machinegun"—specifically, (1) "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger"; (2) "the frame or receiver of any such weapon"; (3) "any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun"; and (4) "any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person." (Doc. 39 at 4.) Defendant further acknowledges that, in the indictment, he is charged solely under the third category. (*Id.* at 1, 5.) Defendant's overarching argument is that although the first category expressly encompasses weapons that "can be readily restored" to automatic

function and the second category incorporates that same concept by reference (as recognized in *United States v. Kuzma*, 967 F.3d 959 (9th Cir. 2020)), the third category does not, either expressly or by incorporation, "include [parts] which can and need to be 'readily restored.'" (*Id.* at 4-11.) In Defendant's view, this limitation is significant because Officer Toy's testing and opinions show that the alleged machinegun conversion device ("MCD") was damaged and thus could not, at least without the use of a shim to restore it, cause the Glock to function as a machinegun. (*Id.*) Defendant also invokes the rule of lenity in support of his contention that "§ 5845(b) does not reach damaged, defective, or nonfunctional parts." (*Id.* at 11.) Defendant concludes: "The single-count Indictment should be dismissed with prejudice because a machinegun conversion device that does not function is not a 'machinegun' under 26 U.S.C. § 5845(b)." (*Id.* at 12.)

In response, the United States argues that Defendant's motion should be denied for two independent reasons. (Doc. 49.) First, the United States argues that although Defendant's motion purports to challenge the sufficiency of the indictment, it is really a disguised summary judgment motion. (*Id.* at 1-3.) Second, at any rate, the United States argues that Defendant's contention "that his Glock switch is not a machinegun unless it also successfully modified his Glock firearm to shoot bullets as a machinegun" is "wrong" because "[t]he law does not require a machinegun to also convert another, separate firearm into a machinegun to be considered a machinegun." (*Id.* at 4.) The United States elaborates: "Relevant here, a machinegun is a 'combination of parts designed and intended[] for use in converting a weapon into a machinegun.' The defendant attempts to move the goalpost and add to this definition by claiming that a Glock switch also needs to successfully convert another firearm into a machinegun for the Glock switch to fall under this definition. That is not true, and the Court should reject adding additional words to statutory definitions . . . . There is nothing in [§ 5845] relevant to Glock switches that touches on shooting or the operational status of another firearm. The defendant's interpretation, which makes the definition of machinegun turn completely on the success of a different firearm's conversion, would substantially undermine the independent

conversion-device categories Congress deliberately created." (*Id.* at 4-5.) The United States contends that "[u]nder the defendant's interpretation, an individual who possesses 10, 50, or even 100 Glock switches could not be charged with a crime under 18 U.S.C. § 922(o) without some other firearm being present. Every single Glock switch possessed would then need to be independently test fired on another firearm, and each would need to work perfectly in converting the other firearm into a machinegun for a defendant to be charged with possessing the Glock switches. This is not the law." (*Id.* at 5.)

D. **Analysis**

Defendant's motion fails for both of the reasons identified by the United States. First, the superseding indictment[5] adequately states an offense. It alleges that, on a specific date within the District of Arizona, Defendant "did knowingly possess a machinegun, that is, a machinegun conversion device commonly known as a 'Glock switch,' which is a combination of parts designed and intended for use in converting a weapon into a machinegun." (Doc. 44 at 1.) This language is sufficient because it tracks the language of the statute, *see* 26 U.S.C. § 5845(b) ("The term 'machinegun' means . . . any . . . combination of parts designed and intended[] for use in converting a weapon into a machinegun") and otherwise identifies all of the essential elements of the crime. No more is required. *See, e.g., Yonn*, 702 F.2d at 1348 ("Those requirements are satisfied by an indictment that tracks the wording of the statute, as long as the language sets forth the essential elements of the crime.").

Notwithstanding this, Defendant argues the evidence at trial will be insufficient to establish that he committed the charged offense because (1) based on the United States'

[5] Although Defendant's motion attacks the sufficiency of the indictment, the grand jury returned a superseding indictment after he filed his motion. The Court has thus analyzed Defendant's dismissal arguments in relation to the superseding indictment. *See, e.g.*, *United States v. Eklund*, 2019 WL 4685398, *1 n.2 (D. Alaska 2019) ("After the Motion to Dismiss Indictment was filed at Docket 86, the grand jury returned a Superseding Indictment. The Indictment and Superseding Indictment are largely identical, and the analysis herein applies equally to both.") (citation omitted); *United States v. Talpas*, 2016 WL 4265731, *1 n.1 (D. Or. 2016) ("After the motion was fully briefed, the grand jury returned a superseding indictment . . . . I construe the motion to dismiss to be directed at the superseding indictment.").

pretrial disclosures, he anticipates Officer Toy will admit at trial that the alleged MCD was damaged and could not convert the Glock into an automatic weapon, at least not without the use of a shim; and (2) in his view, a damaged MCD that cannot, in its current form, convert a firearm into an automatic weapon does not qualify as a "combination of parts designed and intended[] for use in converting a weapon into a machinegun." But the first premise is an impermissible basis for moving to dismiss an indictment under Rule 12(b)(3)(B)(v). As the Ninth Circuit has explained, "[i]n determining whether an indictment charges a cognizable offense, we are bound by the four corners of the indictment, must accept the truth of the allegations in the indictment, and cannot consider evidence that does not appear on the face of the indictment." *Kelly*, 874 F.3d at 1047. Thus, Defendant cannot attack the sufficiency of the indictment based on his prediction of what the evidence at trial will be. *See also United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993) ("[A] Rule 12(b) motion to dismiss is not the proper way to raise a factual defense."). Defendant is, in effect, making a summary judgment argument, but "[c]riminal defendants are not afforded an opportunity to move for pretrial summary judgment." *United States v. Cruikshank*, 2006 WL 8439694, *1 (C.D. Cal. 2006).

Second, although the analysis could end there, the second premise underlying Defendant's motion to dismiss—namely, that "§ 5845(b) does not reach damaged, defective, or nonfunctional parts" (Doc. 39 at 11)—also lacks merit. Defendant tellingly fails to identify any case adopting this interpretation of the third clause of § 5845(b), which runs contrary to the plain statutory language. *See, e.g., United States v. Carter*, 465 F.3d 658, 663-64 (6th Cir. 2006) ("[M]ost courts that have addressed the provision have interpreted it to include a total of four definitions of a 'machinegun,' *i.e.*, the initial definition in the first sentence followed in the second sentence by three independent, alternative definitions added by amendment to the statute in 1968. Given this reading of the statute, we conclude that the district court's denial of the defendant's motion to dismiss the indictment in this case was proper. The indictment satisfied Federal Rule of Criminal Procedure 7(c)(1) in that it cited the law violated and set out 'clearly and concisely' that

the defendant was charged with possessing . . . parts designed and intended for use in converting a weapon into a machine gun.") (citations omitted); *United States v. Bradley*, 892 F.2d 634, 636 (7th Cir. 1990) ("[P]arts may be machine guns in any of three ways: (1) any part 'designed solely or exclusively . . . for use in converting a weapon into a machinegun' is a statutory machine gun; (2) a 'combination of parts designed and intended, for use in converting a weapon into a machinegun' is a statutory machine gun; and (3) 'any combination of parts from which a machinegun can be assembled' is a statutory machine gun if one person has possession or control of all of the parts."). *See also United States v. Palmieri*, 21 F.3d 1265, 1271 (3d Cir. 1994) ("[T]he answer is found in the plain language of the statute itself which provides that machine gun '*shall also include*' items A, items B and items C. This language confutes Palmieri's argument and, indeed, includes three new categories within the definition of machine gun."), *vacated on other grounds, Palmieri v. United States*, 513 U.S. 957 (1994); *Thompson/Center Arms Co. v. United States*, 924 F.2d 1041, 1046-47 (Fed. Cir. 1991) ("The amended definition of 'machinegun' provides three new categories as included within the term 'machinegun': (1) the frame or receiver of a machinegun, (2) *any combination of parts* designed and intended for use in converting a weapon other than a machinegun into a machinegun; *for example, so-called conversion kits*, and (3) *any combination of parts* from which a machinegun can be assembled if such parts are in the possession of a person.") (citation omitted).

In *United States v. Kuone*, 2025 WL 1784973 (D. Kan. 2025), the court addressed a somewhat analogous argument. There, a defendant charged with possessing a Glock switch argued that "because he only possessed a Glock switch, rather than a Glock switch and 'the necessary remainder of the parts from which a machinegun can be assembled,' he has committed no crime." *Id.* at *3. In support, the defendant argued—similar to Defendant's arguments here—that other portions of § 5845(b) evinced an intent to give the third clause of § 5845(b) a narrower construction than its plain meaning would otherwise suggest and that the rule of lenity supported his proposed interpretation. *See, e.g., id.* at *5 ("Kuone offers two attempts at using the series qualifier canon to support his argument.");

*id.* at *6 (discussing "Kuone's invocation of the rule of lenity"). The district court rejected all of those arguments, explaining: "A Glock switch is statutorily a machinegun because it is a part designed solely and exclusively for use in converting a weapon fully automatic. Persuasive district court decisions have repeatedly, recently, and unanimously come to that conclusion. It is little surprise, therefore, that most appellate courts accept it as a given that a Glock Switch falls within the definition of a machinegun and focus on other, downstream issues." *Id.* at *3-4 (citations omitted). The court added: "Kuone seeks to rewrite the statute, not construe its words." *Id.* at *5. So, too, here.

II. Motion to Dismiss The Indictment on Second Amendment, Commerce Clause, And Due Process Grounds

Defendant's second motion argues the indictment should be dismissed for three reasons: "(1) the statute he is charged with violating, 18 U.S.C. § 922(o), on its face and as applied to him, violates the Second Amendment; (2) this statute, whether considered on its face or as applied to him, does not represent a valid exercise of Congress's commerce power; and (3) the government in bad faith failed to properly test the firearm and alleged 'Glock switch' underlying the indictment, making it impossible for him to receive a fair trial." (Doc. 40 at 1.)

The first and second arguments require little discussion because, as both sides acknowledge (Doc. 40 at 8-10; Doc. 48 at 2-4), they are foreclosed by existing Ninth Circuit precedent. *United States v. Henry*, 688 F.3d 637, 638 (9th Cir. 2012) ("[Henry] contends that he has a Second Amendment right to possess a homemade machine gun in his home. We reject this argument because machine guns are 'dangerous and unusual weapons' that are unprotected by the Second Amendment. Henry also argues that Congress did not have the power to enact § 922(o)'s prohibition against possessing machine guns pursuant to the powers delegated to Congress in the Commerce Clause. That argument fails because we already have held that the Commerce Clause authorizes § 922(o)'s machine gun possession ban.") (citations omitted).

Defendant's third argument is based on the premise that if the alleged MCD could

not, "in the condition in which [Defendant] possessed it," successfully convert a Glock into an automatic weapon, this would be exculpatory. (Doc. 40 at 12.) Operating from that premise, Defendant argues that Officer Toy's failure to test-fire the combined Glock and alleged MCD in their "as received" condition—which, according to Defendant, also violated the ATF's standard operating procedures—deprived him of exculpatory evidence. (*Id.* at 12-13.) Defendant acknowledges that a dismissal based on this alleged destruction of evidence would not be warranted unless Officer Toy also acted in bad faith, and he argues that an evidentiary hearing is warranted to explore Officer Toy's mindset. (*Id.*)

In response, the United States argues that "the factual predicate for the defendant's Due Process argument has no application to this case. Whether the defendant's gun operated as a machinegun is simply not relevant to the question of whether his Glock switch was designed and intended to convert a weapon into a machinegun. The Court should deny the defendant's Due Process claim on this basis alone." (Doc. 48 at 4.) Alternatively, the United States argues that the motion fails because (1) Officer Toy did not fail to preserve evidence, as his report shows that he conducted a function test of the Glock and alleged MCD in their as-received condition, during which "the gun 'tested as semiautomatic only'"; (2) the results of that test are not, in any event, exculpatory; (3) Defendant cannot establish that the challenged conduct undermined his ability to obtain comparable evidence by other reasonably available means, as Defendant has never requested to test-fire the Glock and alleged MCD without the shim and the only thing stopping him from doing so now is damage caused by his own expert; and (4) there is no bad faith because the United States did not lose or destroy evidence. (*Id.* at 4-7.)

Defendant's due process argument does not provide a basis for dismissing the indictment. A due process challenge premised on the government's destruction of evidence has three elements: (1) "the unavailable evidence possessed exculpatory value that was apparent before the evidence was destroyed"; (2) the unavailable evidence "is of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means"; and (3) "the government acted in bad faith in failing to

preserve the potentially useful evidence." *United States v. Zaragoza-Moreira*, 780 F.3d 971, 977 (9th Cir. 2015) (cleaned up). Here, Defendant cannot establish the first element for two independent reasons. First, although Defendant faults Officer Toy for not test-firing the Glock, with the alleged MCD attached to it, in their as-received condition, Officer Toy's report makes clear that he performed a function test of these items in their as-received condition before adding the shim: "As received, Exhibit 1 is fitted with a machinegun conversion device further referenced as Exhibit 1A. . . . While examining the frame of Exhibit 1, I noted that it was modified at the rear to accept the leg of Exhibit 1A. . . . . I performed a function test of Exhibit 1 with Exhibit 1A attached. Exhibit 1 tested as a semiautomatic only." (Doc. 37-1 at 5.) Thus, far from destroying evidence, Officer Toy performed at least a variant of the test that Defendant faults him for not performing,[6] and it produced the very result—a finding of only semi-automatic functionality—that Defendant views as exculpatory. Second, regardless, the results of that test are not exculpatory. As discussed in extensive detail in Part I of this order, the superseding indictment charges Defendant with possessing the third category of "machinegun" identified in § 5845(b), i.e., "any . . . combination of parts designed and intended[] for use in converting a weapon into a machinegun," and liability under that provision does not turn on whether the parts, although designed and intended for use in conversion, were incapable of effectively achieving conversion in their as-received condition.

Given these determinations, it is unnecessary to address the remaining elements of

[6] As noted, Officer Toy stated during a trial preparation interview on September 24, 2026—the report of which was disclosed to Defendant on October 25, 2026—that he "conducted a manual function test of the firearm and machinegun conversion device (MCD) consistent with [ATF's] Standard Operating Procedures (SOPs). Upon completing the manual function test, Toy determined the firearm and MCD would not work as received during a live test fire. As a result, FEO Toy adjusted the tolerances of the device using a small paper shim before he conducted a live test fire." (Doc. 67-1 at 2.) The Court disagrees with Defendant's contention (Doc. 67) that these statements are exculpatory or impeaching—they are fully consistent with Officer Toy's February 2026 report, which discloses that he initially inspected Exhibits 1 and 1A, performed a function test that resulted in a finding of only semi-automatic functionality, then added the shim and performed live-fire testing. (Doc. 37-1 at 5-6.)

the *Zaragoza-Moreira* test in any detail—it suffices to say that the Court agrees with the United States' arguments as to why those elements are not satisfied, either.

Accordingly,

**IT IS ORDERED** that Defendant's motions to dismiss (Docs. 39, 40) are **denied**.

Dated this 29th day of October, 2026.

Dominic W. Lanza
United States District Judge